```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
```

GARRY D. LLOYD,

                 1:14-cv-07980-NLH-KMW

    Plaintiff,

 v.                   **OPINION**

TROOPER MICHAEL C. MURRAY,

    Defendant.

**APPEARANCES**:

MICHAEL A. CAUDO
1500 WHITE HORSE PIKE
EGG HARBOR CITY, NJ 08215
  On behalf of Plaintiff

ROBERT P. PREUSS
OFFICE OF THE ATTORNEY GENERAL
DIVISION OF LAW
P.O. BOX 112
25 MARKET STREET
TRENTON, NJ 08625-0112
  On behalf of Defendant Trooper Michael C. Murray

**HILLMAN, District Judge**

  Plaintiff, Garry D. Lloyd, was arrested on February 6, 2012 by Defendant, New Jersey State Trooper Michael C. Murray, for receiving a stolen Bobcat excavator. Presently before the Court is the motion of Defendant for summary judgment on Plaintiff's claims that Defendant violated Plaintiff's federal and state constitutional rights by maliciously prosecuting him. For the reasons expressed below, Defendant's motion will be granted.[1]

---

[1] The Complaint alleged various allegations against numerous defendants. All claims against all defendants have

## BACKGROUND[2]

In January 2012, Murray received a dispatch call indicating that a mini excavator belonging to the Martin Corporation, with the serial number 514016890, had been stolen from a work site. Murray met with Thomas Martin, the owner of the stolen excavator, who gave him a description of the excavator as well its serial number.

On February 6, 2012, Murray received a phone call from Martin. Martin told him that he had received a tip from an informant in response to an offer of a reward,[3] which indicated

---

been dismissed, except for Plaintiff's claim against Defendant for malicious prosecution brought pursuant to 42 U.S.C. § 1983 and N.J.S.A. 10:6-2.

[2] The following facts are recited from Defendant's Local Civil Rule 56.1(a) statement of material facts not in dispute. L. Civ. R. 56.1(a) ("On motions for summary judgment, the movant shall furnish a statement which sets forth material facts as to which there does not exist a genuine issue, in separately numbered paragraphs citing to the affidavits and other documents submitted in support of the motion. . . . ."). Because Plaintiff did not file his opposition with "a responsive statement of material facts, addressing each paragraph of the movant's statement, indicating agreement or disagreement and, if not agreed, stating each material fact in dispute and citing to the affidavits and other documents submitted in connection with the motion," the Court deems Defendant's Rule 56.1 statement as "undisputed for purposes of the summary judgment motion." Id. (also explaining that "[e]ach statement of material facts shall be a separate document (not part of a brief) and shall not contain legal argument or conclusions of law").

[3] A local resident received $500 from Martin for his tip.

that the excavator had been seen at 1479 Coles Mill Road, Williamstown, NJ.

Murray went to 1479 Coles Road, and met with the property owners, Gerry and Patricia Swain. The Swains granted Murray permission to enter onto their property to search for the excavator. Murray did not find the excavator during his search of the 1479 property, but the informant who gave the tip came to the property and directed him to where the excavator was located. Gerry Swain also told Murray that he had seen a man named Garry, the boyfriend of the woman who owned the adjoining property – 1497 Coles Mill Road - directing another man in using an excavator fitting the description of the stolen excavator to do work on the adjoining property. 1479 and 1497 were large, adjacent lots on agricultural land that did not have clear demarcations between them.

When Murray searched the indicated area on 1497 Coles Mill Road, he found an excavator that matched the description received from Martin between two trailers. Although the serial numbers had been removed from the main part of the excavator, the number on the engine block matched the number for Martin's excavator, which definitively identified it as the one that had been stolen from Martin. Murray allowed Martin to retrieve his

3

excavator.

Murray continued his investigation by checking the tax records for 1497 Coles Mill Road, which showed that it was owned by a woman named Gail Stadtler. Murray traveled to 1332 Franklinville-Williamstown Road, where he was told Plaintiff and Stadtler resided. He was not able to make contact at that time. Murray returned to that address to following day and spoke with Plaintiff. Plaintiff agreed to come to the Bridgeton police barracks to make a statement. Once at the barracks, Murray presented Plaintiff with a Miranda card. Plaintiff signed the card but refused to make a statement. Murray then arrested Plaintiff.

In March 2014, Murray testified before the grand jury. Murray testified that Martin had reported a Bobcat excavator stolen from his work site; that the Bobcat's serial number was 514016890; that the Bobcat was found at 1497 Coles Mill Road, in Monroe Township; that Martin identified the Bobcat as the one that was stolen from him; that the 1497 property was owned by Gail Stadtler, and that her boyfriend, Garry Lloyd, was scrapping trailers on the property.

Following Murray's testimony, the grand jury indicted Plaintiff, charging him with one count of receiving stolen

4

property, in violation of N.J.S.A. 2C:20-7(a).  Murray was never called to appear in court as part of the prosecution of Plaintiff and took no further part in the prosecution.  On August 30, 2013, the Gloucester County Prosecutor's Office dismissed the indictment against Plaintiff.

## DISCUSSION

### A. Subject Matter Jurisdiction

Defendant removed Plaintiff's Complaint to this Court. Because Plaintiff has brought federal constitutional claims pursuant to 42 U.S.C. § 1983, as well as a claim under New Jersey law, this Court has jurisdiction over Plaintiff's federal claims under 28 U.S.C. § 1331, and may exercise supplemental jurisdiction over Plaintiff's related state law claim under 28 U.S.C. § 1367.

### B. Standard for Summary Judgment

Summary judgment is appropriate where the Court is satisfied that the materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, or interrogatory answers, demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  Celotex Corp. v.

Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(a).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id. In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor." Marino v. Industrial Crating Co., 358 F.3d 241, 247 (3d Cir. 2004)(quoting Anderson, 477 U.S. at 255).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Id. Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Anderson, 477 U.S. at 256-

57. A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements. Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).

**C. Analysis**

Plaintiff claims that Murray violated his rights under the federal and New Jersey constitution when he was arrested and indicted by the grand jury for receiving stolen property. To prove malicious prosecution under the Fourth Amendment,[4] a plaintiff must show that: (1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in his favor; (3) the defendant initiated the proceeding without probable cause;

---

[4] Because the analysis of claims under state constitutional law is similar to the analysis under the Fourth Amendment, no separate analysis will be undertaken for Plaintiff's claims arising under the New Jersey Constitution. See Hedges v. Musco, 204 F.3d 109, 121 (3d Cir. 2000) (granting defendants' motion for summary judgment on plaintiffs' claims under Article I, paragraph 7 of the New Jersey Constitution, because it was already established that there was no federal constitutional violation) (citing Desilets v. Clearview Regional Bd. of Educ., 627 A.2d 667, 673 (N.J. Super. Ct. App. Div. 1993) ("We are not persuaded that the New Jersey Constitution provides greater protection under the circumstances of this case than its federal counterpart. We note that in its *T.L.O.* opinion the New Jersey Supreme Court analyzed the search and seizure issue under the Fourth Amendment to the United States Constitution, and did not suggest that New Jersey's organic law imposed more stringent standards.")).

(4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding. Johnson v. Knorr, 477 F.3d 75, 81-82 (3d Cir. 2007) (footnote omitted).

Here, even finding that the first, second, and fifth elements of a viable malicious prosecution claim are met, Plaintiff has failed to demonstrate material issues of disputed facts to survive summary judgment on the third and fourth elements.[5]

---

[5] The first prong of Plaintiff's malicious prosecution claim is unclear – that is, even though Murray arrested Plaintiff, it is unclear whether Murray "initiated a criminal proceeding" against Plaintiff because it is not clear who made the decision to present the charge to the grand jury. If Murray is not considered to be the person who initiated the criminal proceeding against Plaintiff, then Plaintiff's claim against Murray is more appropriately a claim for false arrest. See James v. City of Wilkes-Barre, 700 F.3d 675, 680 (3d Cir. 2012) (citations omitted) ("To state a claim for false arrest under the Fourth Amendment, a plaintiff must establish: (1) that there was an arrest; and (2) that the arrest was made without probable cause."); Morales v. Busbee, 972 F. Supp. 254, 266 (D.N.J 1997) (quoting W. Page Keeton et al. at 885–86) ("'So long as the plaintiff has been detained by legal process, it cannot be said that he has been falsely [arrested] and the claim, if there is one, must be for malicious prosecution, where malice and a want of probable cause must be shown. If there is no process issued at all and the plaintiff is arrested without a warrant or any other valid basis for an arrest, there is no malicious prosecution but a false arrest. Where an unjustified detention takes place, followed by an improper prosecution, the plaintiff may be required to assert both false [arrest] and malicious

8

First, with regard to whether Plaintiff's arrest was supported by probable cause, "[p]robable cause to arrest requires more than mere suspicion; however, it does not require that the officer have evidence sufficient to prove guilt beyond a reasonable doubt.  Rather, probable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable

---

prosecution."); Blenman v. Dover Police Department, --- F. Supp. 3d. --- 2016 WL 5955519, at *4 (D. Del. October 12, 2016) (citing Sershen v. Cholish, 2007 WL 3146357, at *10 (M.D. Pa. 2007) (citing Gallo v. City of Phila., 161 F.3d 217, 222 (3d Cir. 1998)) ("A plaintiff's claim for malicious prosecution begins not with an arrest, which is not pursuant to legal process, but with the indictment."); Mawuyrayrassuna Emmanuel Noviho v. Lancaster County Of Pennsylvania, --- F. App'x ---, 2017 WL 1048062, at *4 (March 20, 2017) ("Arrests made pursuant to a validly issued—if not validly supported—arrest warrant generally occur after the institution of legal process and, thus, sound in malicious prosecution rather than false arrest or imprisonment."); In re Grand Jury Appearance Request by Loigman, 870 A.2d 249, 255 (N.J. 2005) ("Both the county prosecutors and the Attorney General are invested with the responsibility of seeking "the detection, arrest, indictment and conviction of offenders against the laws." N.J.S.A. 2A:158-5.).

Because (1) both a false arrest claim and a malicious prosecution claim depend on the assessment of probable cause, (2) Plaintiff's complaint could be read to assert both claims, as it generally asserts a count for depravation of his various constitutional rights arising out of his arrest and indictment, and (3) Murray has not challenged the applicability of the malicious prosecution claim over a false arrest claim, and indeed has stipulated to that claim as the sole claim to proceed against him, the Court will only consider the merits of Plaintiff's sole remaining claim against Murray.

person to believe that an offense has been or is being committed by the person to be arrested." Orsatti v. New Jersey State Police, 71 F.3d 480, 482-83 (3d Cir. 1995) (citations omitted). As the U.S. Supreme Court has summarized:

> The probable cause standard is a practical, nontechnical conception that deals with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. Probable cause is a fluid concept - turning on the assessment of probabilities in particular factual contexts - not readily, or even usefully, reduced to a neat set of legal rules. To determine whether an officer had probable cause to arrest an individual, we examine the events leading up to the arrest, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause.

Maryland v. Pringle, 540 U.S. 366, 371 (2003) (internal quotations and citations omitted).

In this case, Plaintiff argues that probable cause was lacking based on the following:

(1) When the Prosecutor asked Murray at the grand jury proceeding whether the excavator was stolen from the Martin Corporation in Monroe Township, Murray answered affirmatively, even though the Martin Corporation is located in Fairfield Township;

(2) When the Prosecutor asked Murray at the grand jury proceeding whether he learned that the excavator was found at 1497 Coles Mill Road (Plaintiff's girlfriend's property), Murray

10

said yes, even though the informant's tip initially indicated that the excavator was at 1479 Coles Mill Road (the Swain's property);

(3) Genuine issue of material fact exists as to whether the excavator was actually found on 4606 Coles Mill Road owned by another person, and not 1479, 1497, or 4623 Coles Mill Road (owned by Plaintiff or his girlfriend);

(4) Murray's police report does not mention that the informant came to the Swain's property and directed Murray to the excavator;

(5) The serial number on the engine block is not a unique number;

(6) Murray failed to investigate the excavator for evidence, including failing to check for fingerprints or DNA, and did not establish a chain of custody for the evidence, instead allowing Martin to come onto the property and retrieve the excavator;

(7) At some point, Plaintiff told Murray that he saw an excavator on the other property not owned by him or his girlfriend;

(8) At some point, Plaintiff told Murray there were no scrapped trailers on the 1497 property;

(9) After Plaintiff was Mirandized, Murray said, "You are under arrest you piece of shit. Stand up.";

(10) After Plaintiff's arrest, a person working in Stadtler's property, Michael Rambone, gave a statement to Plaintiff's investigator that he found a rusted old excavator that appeared to be abandoned, but he was able to start it. Plaintiff walked up and asked Rambone where the excavator came from, and Rambone said that he discovered it while moving a trailer. Rambone said that Plaintiff told him that he knew nothing about it and to put it back where he found it near the 4606 property;

(11) Murray never interviewed Rambone, or who Rambone was working for, Mr. Bailey; he never took a recorded statement from the Swains; he did not record any information on the informant; he never returned to the property or attempted to differentiate between the properties; he never attended court other than the grand jury despite being the lead investigator, never made any inquiries or calls as to the status of the criminal case, and did not make any requests to the prosecutor to reinstate the case after it had been voluntarily dismissed upon the motion of the state.

Even accepting as true all of these assertions, none refute

the information Murray had on February 6, 2012 that served as a basis to support Plaintiff's arrest. An informant pointed Murray to the area where he saw an excavator matching the description of Martin's stolen excavator. Even though it was not on the Swain's property, Swain told Murray that he had seen Plaintiff directing another man to do work on the 1497 property, which was owned by Plaintiff's girlfriend. The property lines were not readily decipherable, and Murray found the excavator on what appeared to be the 1497 property. The number on the engine block of the found excavator matched the number of the stolen excavator. Murray confirmed that the 1497 property was owned by Plaintiff's girlfriend. These events, as Murray was aware at the time he arrested Plaintiff, are sufficient for a reasonable person to believe that Plaintiff was involved in the theft of the excavator. That Murray did not conduct a full-blown investigation by fingerprinting or testing the excavator for DNA, or surveying the adjoining properties to precisely determine the boundary lines prior to Plaintiff's arrest, does not negate the evidence that existed to connect Plaintiff to the excavator.

Additionally, the events following Plaintiff's arrest and indictment are immaterial to the existence of probable cause for

Plaintiff's arrest. Murray's failure to include a note about the informant returning to the property in his police report, the misstatement that Martin's company was in Monroe Township instead of Fairfield Township, or even Murray calling Plaintiff a "piece of shit," do not undermine Murray's otherwise reasonable determination that probable cause existed at the time of Plaintiff's arrest.

It is therefore apparent that Plaintiff's arrest, and the presentment of Plaintiff's charge to the grand jury a month later, was based on probable cause. Once the grand jury indicted Plaintiff, probable cause existed to continue with the prosecution. See Trabal v. Wells Fargo Armored Service Corp., 269 F.3d 243, 251 (3d Cir. 2001) (explaining that an "indictment establishes probable cause by definition, and it does not evaporate simply because the prosecutor later decided that subsequent events compromised Rodriguez's value as a witness"); King v. Deputy Atty. Gen. Del., 616 F. App'x 491, 495 (3d Cir. 2015) ("A grand jury indictment is prima facie evidence of probable cause to prosecute."); Trabal v. Wells Fargo Armored Serv. Corp., 269 F.3d 243, 251 (3d Cir. 2001) (noting that an indictment establishes probable cause "by definition"); Woodyard v. County of Essex, 514 F. App'x 177, 183 (3d Cir. 2013)

(quoting Rose v. Bartle, 871 F.2d 331, 353 (3d Cir. 1989)) ("A presumption that probable cause exists will only be overcome by evidence that the indictment was 'procured by fraud, perjury or other corrupt means.'").

Similarly, Plaintiff has not articulated any facts that would show that Murray acted with malice. "Actual malice in the context of malicious prosecution is defined as either ill will in the sense of spite, lack of belief by the actor himself in the propriety of the prosecution, or its use for an extraneous improper purpose." Morales v. Busbee, 972 F. Supp. 254, 261 (D.N.J. 1997) (citation omitted) (also explaining that the element of malice may also be inferred from a lack of probable cause). Even accepting as true that Murray called Plaintiff "a piece of shit," that statement does not, without more, evidence the level of malice required for a malicious prosecution claim, particularly where probable cause existed for Plaintiff's arrest. See Geissler v. City of Atlantic City, 198 F. Supp. 3d 389, 399 (D.N.J. 2016) (citations and quotations omitted) ("In an appropriate case, malice may be inferred from a lack of probable cause. But conversely, and similar to a claim for false arrest, the existence of probable cause defeats a malicious prosecution claim. Simply put, if [the officer] had

probable cause to believe that Plaintiff committed the offense with which she was charged, then he did not violate Plaintiff's right to be free from malicious prosecution.").

## CONCLUSION

Based on the foregoing, Plaintiff has failed to proffer sufficient evidence from which a jury could conclude the defendant lacked probable cause for Plaintiff's arrest and acted with malice. In the absence of a constitutional violation, defendant is entitled to qualified immunity. Accordingly, Murray is entitled to summary judgment in his favor. An Order consistent with this Opinion will be entered.

Dated: May 8, 2017                    s/ Noel L. Hillman
At Camden, New Jersey                 NOEL L. HILLMAN, U.S.D.J.